The Burlington, Cedar Rapids & Northern Railway Company, Appellant, v. The City of Columbus Junction, et al.

**Highways:** DEDICATION: *Cities and towns.* Land uninclosed by a railroad company and made use of for over twenty years with adjacent land for a public highway upon which a town has expended money and labor, will be held to have been dedicated to, and accepted by it, unless a formal acceptance of the strip is required by law.

CONSTRUCTION OF STATUTE. The provision of Code 1873, section 527, which requires that a dedication of land to public use can be acquired and confirmed only by special ordinances passed for the purpose, does not apply to towns, but to cities, only.

SAME. Such statutes, being intended to protect cities from liability being imposed upon them from land owners in dedicating streets irrespective of necessity therefor, does not prohibit the city from acquiring title to streets in some other way than by a dedication, and an acceptance by ordinance, as by purchase or prescription.

PRESCRIPTION AND ADVERSE POSSESSION. A town will acquire title by prescription and adverse possession to a strip of land forming part of the right of way of a railroad company, but left uninclosed for many years, and which has been taken into a public highway and used and improved as such, where the property was originally entered upon under an agreement with one purporting to represent the company, that it would dedicate the strip for road purposes.

*Appeal from Louisa District Court.*—Hon. Ben McCoy, Judge.

FRIDAY, DECEMBER 17, 1897.

ACTION in equity to restrain the defendants from tearing down and removing a fence. There was a hearing on the merits, and a decree in favor of the defendants. The plaintiff appeals.—*Affirmed.*

*Gray & Tucker* and *S. K. Tracy* for appellant.

*B. F. Van Dyke* for appellees.

ROBINSON, J.—The plaintiff owns a right of way for its railway track which extends through a portion of the town of Columbus Junction, from the southern limit of the town, in a northwesterly direction. The right of way appears to have been acquired by condemnation proceedings in the year 1868, and it seems that a public highway was established along the west or southwest side of the right of way, although the evidence in regard to the time of acquiring the right of way and of establishing the highway is not definite. But we do not understand that there is any controversy in regard to those matters. The right of way was fifty feet in width on each side of the center of the railway track. In the year 1875, if not earlier, the railway company constructed a fence twenty-eight feet southwest of the center of its track, leaving outside the fence a strip of its right of way twenty-two feet wide, next to the highway. That fence

was of boards, and in time was replaced with a wire fence. In September, 1895, the wire fence was moved out to a line parallel to, and fifty feet from, the center of the track. Later in the same year the town ordered the plaintiff to remove the fence, and directed that, in case of its failure to do so for ten days, the removal should be made by the street commissioner. This action was brought to restrain the enforcement of that order.

The defendants, the town and its street commissioner, claim that the strip of ground outside the line on which the first fences were built (the strip being about one hundred and twenty rods in length) was dedicated to the town as a public street, and accepted by the town; also, that title thereto has been acquired by prescription. It is shown that the portion of the highway or street used, and the strip of land in question, were, together, about forty feet in width; and it is admitted that the strip was used with the highway as a street for twenty years before the fence in controversy was built, and that during that time the town used and improved it, expending money and labor upon it. It is clear, unless a formal acceptance of the dedication is required by the town that there was a dedication of the strip which was accepted by the town. Had land outside a city or town been treated as was that in question, there would have been an actual dedication to the use of, and an acceptance for, the public. *State v. Birmingham,* 74 Iowa, 407; *Sherman v. Hastings,* 81 Iowa, 372, and cases therein cited. But it is said that a dedication by the railway company would not have been effectual, unless formally accepted by ordinance, and in support of that claim section 527 of the Code of 1873 is cited. That section provided that "no street or alley which shall hereafter be dedicated to public use by the proprietor of the ground in any city, shall be deemed a public street or alley, or to be under the use or control

of the city council, unless the dedication shall be accepted and confirmed by an ordinance especially passed for such purpose." It is not shown that the town ever accepted the dedication of the land in question by ordinance, but the provision quoted applies to cities only, and not to towns. The defendant municipality is described in the title of this cause as a city, but in the body of the pleadings as a town, and that we understand to be the class to which it belongs. But, if we are in error in this respect, we should be compelled to reach the same conclusion as to the final disposition of the case. It was said in *Byerly v. City of Anamosa,* 79 Iowa, 206, that the section referred to was "clearly intended to protect cities from liability and responsibility thrown upon them by landowners in dedicating streets to public use without giving the city an opportunity to determine whether such streets are demanded by the public good, and the wants of the citizens. In the absence of the statute the city would be powerless to resist the designs of landowners to make it liable for all streets they might dedicate, without regard to the public good, or the wants of the people." But the right of a city to assume the use and control of streets dedicated by landowners without an acceptance by ordinance, and its liability for not keeping such streets in good condition, was recognized in the case. The statute only refers to streets and alleys which are dedicated to public use by the landowner, and not to streets and alleys, the title to which has been acquired by the city by purchase or by prescription. The evidence in this case shows that the town acquired the right to use the land in controversy as a street by prescription, if not by dedication. It is true that title by prescription could not have been acquired by mere use for the required time, and that adverse pos-

session must be proven by evidence distinct from, and independent of, the use. Code 1873, section 2031.

3      But there is sufficient evidence of that character in this case to sustain the right claimed by the town. Before the first fence was built by the railway company, a person who claimed to represent the company talked with the owner of the land from which the right of way was taken, and it was agreed between them that the company should give land for one-half the road at the place in question. The rough character of the land at that place made it desirable to use a part of the right of way for road purposes. It is not shown that the person who represented the company was authorized to act for it, but the company carried out the agreement, by so building its fence as to leave the strip of land in controversy as a part of the street. It certainly knew of the use made of it by the town, and that improvements were made by the owners of property adjacent to the road as thus made with a view to its continued use for road purposes. We conclude that the judgment of the district court is right. That denied the plaintiff relief, and gave to the town the strip of land in question for highway purposes, and it is AFFIRMED.