## N. T. BURROUGHS v. THE CITY OF CHEROKEE, IOWA, AND E. F. WILKIE, Appellants.

**Town plats:** DEDICATION. Under the Code of 1873, the filing of a
1 duly acknowledged plat of an addition to an incorporated town conveyed the fee to the streets included therein, without an acceptance of the dedication by ordinance; and a plat so filed was not affected by the subsequent passage of a general ordinance requiring a submission to the council for its approval of all additional plats, since an ordinance of that nature was in excess of statutory power.

**Same:** ACCEPTANCE. While acceptance of the dedication of a town
2 plat need not be by ordinance, yet there must be some acts on the part of the municipality from which an acceptance may be inferred before it can be charged with the burden of care and the safety of the streets included therein.

**Same.** The recording of a plat is a tender to the town of a con-
3 veyance of the streets and alleys embraced therein and con-

tinues, for a reasonable time, until either withdrawn or accepted; and what is a reasonable time depends upon the circumstances of each case.

**Streets:** ABANDONMENT: ESTOPPEL. While mere non-user for a period of ten years will not estop a municipality from asserting its right to a dedicated street, yet, where there has been such non-user for not less than the statutory period accompanied by notorious, individual possession, under a claim of right, the public will be presumed to have abandoned its right.

**Town plats:** ADDITIONS: ACCEPTANCE BY MUNICIPALITY. The adoption of an ordinance directing the construction of a sewage system along the streets of an addition will constitute an acceptance of the streets and alleys contained within the plat.

**Same:** ACCEPTANCE: EVIDENCE. The evidence in this action, brought to enjoin a city from interfering with plaintiff's possession of certain alleged public streets, is reviewed and held insufficient to show an intention on the part of the city to decline an acceptance of the plat prior to the adoption of an ordinance providing for the future improvement of its streets.

*Appeal from Cherokee District Court.*—HON. WM. HUTCHINSON, Judge.

THURSDAY, NOVEMBER 15, 1906.

Rehearing Denied, Monday, May 20, 1907.

ACTION to enjoin defendants from interfering with plaintiff's fences across certain alleged streets. Decree as prayed. Defendants appeal. *Reversed.*

*Wm. Mulvany* and *A. R. Molyneux,* for appellants.

*Herrick & Herrick* and *E. H. Hubbard,* for appellee.

LADD, J. The plat of Burroughs' Magnetic Spring addition to New Cherokee was properly acknowledged and filed for record May 16, 1882, and this, under the statute then in force, was " equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use."

1. PLATS: dedication.

Section 561, Code 1873; *Coe College v. City of Cedar Rapids,* 120 Iowa, 544. At that time New Cherokee was an incorporated town, and acceptance by ordinance was not essential. *Burlington, C. R. & N. R. Co. v. City of Columbus Junction,* 104 Iowa, 110, section 527, Code 1873. Nor is this conclusion obviated by an ordinance of New Cherokee, passed May 2, 1882, in which it was declared that " extension of the original plat of said incorporated town, or additions thereto, shall be illegal and of no effect or binding force on said incorporated town unless the plat of said addition or extension is submitted to the town council in said incorporated town of New Cherokee, Iowa, at a regular session thereof, and by said town council approved by resolution regularly passed by said town council." Chapter 12 of title 4 of the Code of 1873 provided for the platting of additions to incorporated towns and cities, and declared precisely what was necessary as conditions precedent to the recording of plats, and it was not competent for the town of New Cherokee to annex thereto additional requirements. This was clearly in excess of its authority. A municipality cannot exercise a power unless it is expressly conferred by the Legislature or necessarily implied in order to carry out powers expressly conferred. *Des Moines v. Gilchrist,* 67 Iowa, 210; *Keokuk v. Scroggs,* 39 Iowa, 447; *Brockman v. City of Creston,* 79 Iowa, 587. As the entire subject of platting had been fully covered by the general statutes, without the aid of municipal councils, the passage of the ordinance was in excess of the powers which the town of New Cherokee might exercise, and was therefore void.

But it does not follow, although appellants so contend, that no acceptance of the proposed dedication was necessary. There are authorities to the effect that a statutory dedication 2. SAME: acceptance: streets. without acceptance vests title to portions of a plat set apart for public purposes in the municipality. This is on the theory that the plat, being recorded, may be relied upon by the public until the same

has been canceled by an act of equal solemnity and authority, and that, as the statute has provided for a vacation of the plat, until this has been done the fee of the streets and alleys should be deemed to rest in the town or city. *Baker v. St. Paul,* 8 Minn. 491 (Gil. 436); *Brown v. Carthage,* 123 Mo. 10 (30 S. W. 312); *City of Jacksonville v. Jacksonville R. Co.,* 67 Ill. 540; *Town of Lake View v. Le .Bahn,* 120 Ill. 92 (9 N. E. 269). It seems that under these authorities the burden may be cast upon the municipality, without its consent, to keep streets and alleys so dedicated in repair, and that liability will attach for personal injuries resulting from the neglect so to do. *Denver v. Clements,* 3 Colo. 472; *Osage City v. Larkin,* 40 Kan. 206, (19 Pac. 658, 10 Am. St. Rep. 186, 2 L. R. A. 56). An examination of the statutes construed in these decisions, however, will indicate that they provide in effect that the recording of the plat shall operate to vest title in the city. Under our statute the filing of the plat is made equivalent to a deed in fee simple to the streets and alleys, but; like other deeds, requires acceptance, before it can be effective in conveying the title and casting the burden upon the municipality for the care and safety of the ways proposed. That this was so intended by the Legislature is settled conclusively by the statute exacting such an acceptance on the part of a city by the enactment of an ordinance, and also by the provisions for a vacation of a plat prior to the sale of any lots. Section 563, Code 1873. And such seems to have been the opinion of this court for many years. *Bell v. City of Burlington,* 68 Iowa, 296; *Johnson v. City of Burlington,* 95 Iowa, 197; *Town of Cambridge v. Cook,* 97 Iowa, 601; *Updegraff v. Smith,* 106 Iowa, 385; *Brown v. Taber,* 103 Iowa, 2; *Blennerhassett v. Forest City,* 117 Iowa, 680.

The recording of the plat is a tender of the conveyance of portions set apart as streets and alleys for such use to a municipality, and continues until shown to have been with-

drawn. The law points out the procedure necessary to va-
cate the plat of record, and, until this has
been done, or circumstances indicate to the

3. SAME.

contrary, the proprietor is presumed to continue his
invitation of public acceptance and improvement. Ordi-
narily tracts which are platted are at some distance
from the populous portions of the town or city and the
proprietor, in offering to change his property from rural
to urban, must be presumed to anticipate some delay in
the acceptance and improvement of the streets and alleys
separating the lots and blocks. When sparsely settled, years
may elapse before the necessity will arise for grading or
otherwise improving the streets, and until then the public
ought not to be deprived of the right to accept them. How-
ever, delay may be for so long a time and under such circum-
stances as to indicate the abandonment of any intention to
accept, and so it is quite generally held that acceptance must
be within a reasonable time. *Sarvis v. Caster,* 116 Iowa,
707. What is a reasonable time will always depend upon
the circumstances in each particular case. The proprietor,
in recording the plat, proposes to the public that the ground
represented as streets shall forever remain open to be used
for that purpose, and by sale of lots or blocks with reference
to the plat he precludes himself from making any other dis-
position of the streets. Ordinarily but part of the streets
will be required for use for many years, depending upon the
development and growth of the particular locality. As the
proprietor receives ample consideration for his property in
the sale of lots to others, he has no ground for complaint of
delays in improving the ground dedicated to the public use.
*Meier v. Portland Cable R. Co.,* 16 Or. 500 (19 Pac. 610,
1 L. R. A. 856). In *Taraldson v. Incorporated Town of
Lime Springs,* 92 Iowa, 187, and *Backman v. City of Oska-
loosa,* 130 Iowa, 600, the acceptance was more than ten
years subsequent to the filing of the plat. In *Shea v. City
of Ottumwa,* 67 Iowa, 39, the ground dedicated for the street

was rough and hilly, and it was held that the city was not too late in accepting it thirty years after the dedication. In *Mayor, etc., of Baltimore v. Frick,* 82 Md. 77 (33 Atl. 435), the court held that it is not necessary that the street be used within any limited time, in the absence of a condition to that effect, and that an acceptance twenty-three years after the filing of the plat was timely. The lapse of time alone has not been such as to indicate a purpose not to accept ultimately as streets the grounds set apart for that purpose in the plat filed. Does the delay therein, when considered in connection with other circumstances, so indicate? In *Uptagraff v. Smith,* 106 Iowa, 385, the proprietor had kept the land platted inclosed by fence and had cultivated the ground set apart for streets for more than ten years, for eight or nine of which the town had levied and collected taxes thereon, and he was held entitled to a decree quieting title against the incorporated town of Minnewaukon. In *Blennerhassett v. Incorporated Town of Forest City,* 117 Iowa, 680, the plaintiff with her husband had fenced an alley, set out trees and shrubbery established a private driveway therein, dug a well, built a summer house, and otherwise made use of it as a part of the abutting lots, since prior to 1880. During that year there was an attempt, though irregular, on the part of the town to vacate the plat. Nineteen years afterwards the city demanded that the obstructions in the alley be removed, and the court held, in an action to enjoin interference with plaintiff's possession, that the city was estopped from claiming the ground as a public alley. See *Corey v. City of Ft. Dodge,* 118 Iowa, 748.

The subject of estoppel of the city or town to claim a street or alley for public use against one who has occupied it exclusively for private purposes was fully considered in 4. STREETS: abandonment: estoppel. *Weber v. Iowa City,* 119 Iowa, 633, and the conclusion reached that where there has been a nonuser of a street or an omission to accept ground dedicated for a street during a period of more than ten years, through-

out which the original proprietor or his grantees have been in actual, exclusive possession under claim of right, without interference or protest on the part of the officers or the public, the municipality is estopped from asserting that the ground constituted a street. After referring to the doctrine announced in *City of Waterloo v. Union Mills Co.*, 72 Iowa, 437, that the statute of limitations does not run against a municipality in such a case, it was there said:

This does not mean that a city may abandon all use of and control over a street, and stand idly by while it is closed to the public under a claim of private right, and subjected to use and occupancy as private property, and then at any time in the indefinite or remote future be heard to demand its reopening. There is no law which compels a city to open and improve a street which has been platted and dedicated to public use, nor any law which forbids the total abandonment or vacation of one which has already been opened. It is therefore well settled in this and most other States that, while mere nonuser for 10 years or more will not of itself operate to defeat the public title to a street, yet where there has been such nonuser for a long time — not less than the statutory period in ordinary cases — and this is accompanied by the actual and notorious possession of the land by an individual as private property under a claim of right, an abandonment will be presumed, and the public right in the street will be held to have been extinguished. . . . Practically speaking, the land has never been opened or subjected to public use as a street since its platting 56 years ago. This is concededly true for a period of 20 years immediately before the commencement of suit, during all of which time the defendant has been in actual, exclusive possession under claim of right, without protest or interference from the city, its officers, or the general public. This we have repeatedly held will work a loss of the public right, and the rule thus stated must be considered the law of this State. This, it must be remembered, does not apply to mere nonuser, where there is no actual possession under a hostile or inconsistent claim of right; nor will mere delay to assert a public right, in the absence of other circumstances raising an equity in favor

of an individual claimant, be sufficient to create an estoppel
or establish an abandonment.

Technically speaking, there can be no abandonment of a
street which has never been accepted.   Not having obtained
title or right to the ground tendered by the plat for that pur-
pose, the municipality has nothing to part with save the mere
right or privilege of acquiring the ground for street purposes.
The loss of this right or privilege can be established only by
proof of circumstances indicating a determination on its
part not to avail itself thereof, and therefore in effect a re-
fusal to accept, or which estop it from asserting the right;
and this happens whenever there has been occupancy of por-
tions of the plat set apart for public purposes by the pro-
prietor or his grantees in a manner inconsistent with future
use for such purpose and for such length of time as shall
show acquiescence by the officers of the city or town in the
permanent appropriation of the ground for other purposes.

Having stated the principles which must govern our de-
cision, we first inquire whether the portions of the plat
known as " Burroughs' Magnetic Spring addition to New
Cherokee " set apart for streets have ever been accepted as
such by the defendant or its predecessor, New Cherokee.
Nothing has been expended thereon by the public in the way
of work or improvements, and the dedication was not ac-
cepted by ordinance, unless this happened by virtue of the
adoption of an ordinance establishing a system of sanitary
swerage in 1896 or 1897.   For an accurate knowledge of the
situation it is necessary to set out the map of the addition
and other lands of plaintiff, prepared by J. S. Pingree, the
county surveyor, and conceded by the parties to be correct.
See following page.

The plaintiff, George W. Lebourveau, and R. B. Taylor
5. TOWN PLATS:    joined in platting the addition in question
additions:
acceptance by    May 16, 1882.   Of this Burroughs owned
municipality.    blocks 1 and 2 to the center of Magnetic ave-
nue; Taylor, blocks 4 and 16; and Lebourveau, blocks 5, 7, 8,

9 and 10. This constituted the entire addition. The line
of short cross-marks indicates the location of the fence. It
was torn down where it crosses Summit, Magnetic, Park
("E. Cedar" on map), and Saratoga avenues, and the relief
sought is a permanent injunction restraining the city from
interfering with the plaintiff's fence at these localities. This
necessarily depends upon whether it has the right to make
use of the so-called avenues for street purposes. The ordi-
nance referred to adopted certain profiles and plans and speci-

fications directing that sewerage pipes should be placed nearly
the whole extent of Summit avenue, in part of Magnetic ave-
nue, also a portion of Park avenue, which is designated on the
map as " E. Cedar Street," and also through Saratoga ave-
nue to its intersection with Park avenue.    The plans also
designated the location of pipes in the alleys.    We think that
this necessarily contemplated the use of these streets and al-
leys as such by the city, and that the enactment of the ordi-
nance contemplating the improvements indicated was equiva-
lent to an acceptance of these streets and alleys by the city.
To accomplish this it was not necessary that the acceptance
be indicated by express words.    The enactment of any ordi-
nance showing a clear intention on the part of the munici-
pality to recognize these strips of land as streets and alleys
constituted an acceptance within the meaning of the law.
Thus an ordinance directing the public improvement of a
street, such as will put it in proper condition for use by the
public has been adjudged an acceptance.    *Cohons v. Dela-
ware, etc., Canal Co.,* 134 N. Y. 402 (31 N. E. 887).    The
adoption of the plans and specifications of the system merely
provided for the laying of sewerage pipes in these proposed
streets and alleys whenever the necessities of the neighborhood
and municipality might require.    In indicating their pros-
pective location in such streets and alleys where, were these
private property, the city would have no right to place them,
but where, were they streets and alleys in fact, the pipes
properly might be laid, the purpose of accepting the dedica-
tion by the council in adopting the system is too manifest not
to be inferred.    *In re Hunter,* 163 N. Y. 542 (57 N. E.
735, 79 Am. St. Rep. 616).    It ought not to be thought
that the council, in directing that sewers, when laid, should be
placed in the spaces platted for streets and alleys, contem-
plated the illegal act of trespassing upon the grounds of an-
other, but rather should the presumption prevail that in pro-
viding for sewers therein, as part of the city's system, it was
the purpose of the council to recognize and treat such strips

of land as belonging to the city in trust for the use of the public as streets and alleys.    As contended, the improvements contemplated have not been extended to this portion of the city.    Nor was this necessary.    The city was not bound to improve the streets immediately upon their acceptance. That was a matter within the discretion of the governing officers.    This would have been true upon the most formal acceptance, and therefore is not ground for saying that the enactment of the sewer ordinance was not an acceptance.

It appears, then, that fourteen or fifteen years had elapsed from the recording of the plat to the time the city accepted the dedication of the streets.    This alone would not bar such right, and our next inquiry is whether the circumstances are such that the inference may be drawn that the city, prior to such acceptance, had acquiesced in the use of the land proposed for streets for other purposes, and thereby abandoned the right to acquire them by acceptance for the public.    Ever since the recording of the plat the parties have conveyed the lands by lots and blocks as numbered in the plat. Moreover, residences have been erected on several lots.    Nathaniel Bruce has resided on lots in block 1 since 1883.    W. H. Millard resided on lot 2 in block 3 for several years after 1889, since which time the house has been occupied by a tenant.    There has been a residence on lots 1 and 2 in block 4 since 1885; on lot 5 in block 6 since 1891; on a strip on west side of block 7 since 1891.    The south two hundred and seventy-three and one-half feet of block 10 has been platted into lots and disposed of by the purchaser. Plaintiff claimed to have acquired the seven lots of block 5 from Lebourveau, and explained their inclusion within his fence on this ground; but the record leaves no doubt of his mistake in this.    He first became owner thereof under a conveyance from Job Leeds May 16, 1902, long after the acceptance by the city.    Leeds obtained title thereto through mesne conveyance under Lebourveau.    It will also be observed that each street mentioned, if plaintiff's contention be

accepted, will be a cul-de-sac, and those purchasing lots abutting thereon, relying on the existence of streets as indicated in the recorded plat, as they are presumed to have done, will have but one way of exit. Such a situation is a strong circumstance against the contention that the streets had been withdrawn. See *Dodge v. Hart,* 113 Iowa, 685.

But plaintiff contends that, notwithstanding the sale of lots according to the plat, the making of a cul-de-sac of each street, and the omission of the city to tax the streets and 6. SAME: acceptance: evidence. alleys for twenty years, his occupation of the land for more than ten years prior to the passage of the sewer ordinance was so inconsistent with the future use of any portion of it for streets that defendant should be held to have abandoned any purpose to accept the proposed dedication. Undoubtedly plaintiff improved the grounds included within the fence with a view of establishing a health resort. Water from a flowing well nearby was supposed to possess curative qualities. A large sanitarium was erected in 1882, shortly after the plat was filed, at the place on the map designated " Fountain House." This extended within between forty and fifty feet from the east line of block 3. An artificial lake of about two acres was excavated from the low ground and is designated on the map " Magnetic Lake." This has been abandoned for use as a lake for many years. The earth removed therefrom was used in leveling other portions of the premises and improving the driveways and track. Several thousand dollars were expended for this purpose. As appears, the lake extended across Saratoga Avenue, where it was five or six feet deep. How wide it was does not appear. A fountain was constructed in front of the sanitarium, and a row of evergreens placed around it. A sidewalk was constructed along the north side of Magnetic avenue, extending to the Fountain House, and from there down to and about the fountain. Between the block and the Fountain House it is similar to a street crossing. Trees were set out in other portions of the ground. A bridge was constructed

over the bayou to Woodland Island. The driveways were laid out and improved where the streets are designated on the map, save Saratoga avenue. All this appears to have been done prior to 1885. A temporary fence was constructed, as indicated on the map, in 1882, and remained there for some years. The Fountain House was used as a health resort for several years, later as a Keeley institute, and still later as a cancer infirmary. When not leased for these purposes, it was cared for by tenants. In 1890 the track was leased to the Cherokee Horsemen's Association for a period of five years, and, as a condition of the lease, plaintiff erected stalls for horses on certain lots and an amphitheater, and also a high board fence where the temporary fence formerly stood, except for a distance of about one hundred and eighty feet, where it was wire. During races or baseball games, or when a circus was held on the grounds, the gates were closed for the purpose of exacting admission fees. The grounds were also used for picnics and playing golf; but, until two years prior to the beginning of this action and long after the acceptance, were not closed to the public. Gates were maintained in Summit and Magnetic avenues and at the southwest corner of lot 9. These were usually left open in the daytime, and at night closed to prevent the escape of the tenant's stock. But, even when closed, any one choosing to do so was permitted to open them and drive through the grounds. There is some conflict between the testimony of plaintiff and his tenants concerning this; but from an examination of the entire record no other conclusion can be reached than that the gates were left open for the accommodation of any person wishing to drive through the grounds in the daytime and in fair weather. If closed, it was owing to the muddy condition of the roads, or at night by the tenant desiring to shut in stock which he might have upon the grounds. If the gates were open, the public made free use of the driveways. If closed, those desiring opened them and drove through. The mere fact that plaintiff continued in

possession of the premises was not inconsistent with the right of the city to accept the dedication of the streets and alleys. Nor do we think the erection of a fence, under the circumstances disclosed, inconsistent therewith. Until accepted by the city, the land set apart for streets and alleys remained the property of the proprietor and he had the right to the possession and use of the same, and, unless such possession and use was inconsistent with the future acceptance by the city, it did not indicate the purpose to appropriate the land for private uses. The public were at no time excluded from driving over the grounds. The driveways were where the streets were laid out, and were improved for the use of the public. We are of the opinion that the maintenance of these gates at Summit and Magnetic Avenues and the improvement of the driveways at the precise location set apart for streets is a strong circumstance rebutting any inference of use inconsistent with the dedication. Magnetic Lake extended into Saratoga avenue; but, in fencing, the plaintiff was careful not to exclude that portion of the avenue between blocks 9 and 10, and from this it may well be inferred that the excavation of the lake therein was not with the design of permanently appropriating the street.

But it is said that the location of the streets within the inclosure was not sufficiently definite. The dedication stated that the width " of each street and alley is as shown on the above plat. . . . There are stones planted at the intersection of the streets marked ' X '." A photograph of the plat introduced in evidence indicates the location of these stones at the intersection of the streets, one of them at the intersection of Park and Saratoga Avenue, and that Saratoga avenue passes from the south line of blocks 9 and 10 to the intersection of Summit avenue. It is regular up to the intersection with Park avenue, and then curves around block 5, and then around block 3, as appears from the plat. The space marked " Street " in block 1 is in fact lot 10, and was not dedicated as a street. The exact loca-

tion of Saratoga avenue around the end of block 3 is indefinite. But the plaintiff has set out trees in the end of said block and laid out the driveway subsequent to the dedication, thereby plainly indicating the place where the street was intended to be. Appellee's argument proceeds on the theory that Saratoga avenue extended no farther than the intersection of Park avenue; but it plainly appears from the map that the designation was intended for the street extending to the intersection of Summit avenue. It is also urged that the finding that this is a street would require the removal of the sanitarium, which admittedly extended 14 feet within the street line. As the building was erected shortly after the dedication, it must have been placed there by mistake; for surely the plaintiff cannot be said to have intended to appropriate land set apart for a street immediately upon filing his plat. Whether the public may interfere therewith is not now necessary to decide. *Klinker v. Schmidt*, 114 Iowa, 695.

Briefly recapitulating, we have to say that the only circumstances inconsistent with the city's right to acquire the streets by acceptance were the excavation of the lake across Saratoga avenue and extension of the sanitarium partly in the street. This last must have been by mistake rather than by design, as the building was erected about the time the plat was filed and the driveway laid out and improved. How the lake came to be so excavated there does not appear. It was done shortly after the plat was filed. Plaintiff did not include Saratoga avenue below it within his fence, as doubtless would have happened had he intended to permanently appropriate it. Nor ought he to be assumed, unless necessarily so, to have cut off the end of this street and created of it a cul-de-sac. On the other hand, there is the presumption that the dedication of the streets and alleys was tendered in good faith and not to be withdrawn immediately or as soon as the lots were disposed of. Nor ought it to be assumed that the proprietor, in improving his land, de-

signed, after selling lots according to the plat, to close the exits from the streets on which they abutted. And, even though no taxes were levied on the ground set apart in the plat for public use for twenty years, this ought not to be imputed to a purpose of the proprietor to evade a portion of the burdens of taxation. We prefer to adopt a theory more consistent with fair dealing, and to say that taxes were not levied or paid because the ground was not taxable; that in erecting the fence there was no purpose of permanently interfering with the streets on which the lots he had sold abutted, contrary to the representations on which sales were made; that in improving the driveways where the streets were laid out, in erecting gates therefrom into the side streets, and in allowing the public the uninterrupted use thereof up to the time of acceptance, the purpose was to hold them in readiness for the public whenever the municipality might choose to take them. We are of the opinion that the city, upon accepance by the enactment of the sewer ordinance, acquired title to all the streets and alleys of the plat; and for this reason the court erred in restraining the removal of any obstructions placed therein.— *Reversed.*