Peter Weber, Appellant, v. The City of Iowa City and Thomas Hanton, Street Commissioner, Appellees.

Streets: NON-USER: ABANDONMENT.   Where there has been a non-user of a public street for a long time—not less than the statutory period in ordinary cases—accompanied by actual and uo-

| | |
|---|---|
| 119 | 633 |
| 119 | 857 |
| 119 | 633 |
| 122 | 694 |
| 119 | 633 |
| 124 | 254 |
| 124 | 523 |
| 119 | 633 |
| 129 | 703 |
| 130 | 155 |
| 119 | 633 |
| 131 | 215 |
| 119 | 633 |
| f134 | 434 |
| 119 | 633 |
| f138 | 303 |
| 119 | 633 |
| 140 | 579 |
| f141 | 596 |
| 119 | 633 |
| 143 | 714 |
| 144 | 356 |

torious possession of the land by an individual under a claim of right, an abandonment of the street will be presumed and the public right therein extinguished.

*Appeal from Johnson District Court.*—Hon. M. J. WADE, Judge.

THURSDAY, FEBRUARY 12, 1903.

*Baker & Ball* and *S. H. Fairall* for appellant.

*Ranck & Bradley* and *W. H. Bailey* for appellees.

WEAVER, J.—The plaintiff claims to be the owner of a tract of land within the limits of Iowa City. The city, claiming that a street known as "Randolph Street" has been properly established along and upon the east side of said tract, instructed its street commissioner to open and improve the same, and thereupon plaintiff, denying the existence of such street, brought this action to enjoin interference with his possession. The defendants deny the plaintiff's claim of ownership to the land covered by said alleged street, and say that such street was platted and dedicated to the public in the year 1857 by Robert Lucas, who was then the owner of said land; that said street is part of a plat of a larger tract, consisting of blocks, lots, streets, and alleys, which plat was accepted by the city; that said street intersects with others, and is a matter of convenience to the public and property owners in that vicinity; and that the right of the city to open, improve, and use the street has never been surrendered or lost. By way of reply the plaintiff alleges that in the year 1865 the plaintiff and E. W. Lucas, then being the owners of said plat, undertook to vacate a part thereof, including Randolph street, and supposed they had done so, but by a mistake in the written instrument of vacation said street was not included therein; that, relying upon said supposed vacation, and not knowing of the mistake aforesaid, plain-

tiff entered into possession of the land originally platted
as Randolph street, inclosed it with fences, and made
other valuable improvements thereon, and remained in
such possession, claiming and using the land as his own,
for more than thirty years, with the knowledge of and
without objection by the city or the public at large.      He
further says that during this period the land has been
taxed as his property, and the city has received such taxes;
that prior to the attempt to open said street the city or-
dered plaintiff to build a sidewalk along the south side of
Kirkwood avenue, and in front of the tract now claimed
as a street; that upon such order he did construct the walk,
which is still in place; and that by reason of all these
matters and things the city is estopped to claim any right
to open or maintain a street over the premises in dispute.

It is admitted, or, if not admitted, is shown without
material controversy, that the addition was platted in
1857, but was not included within the city limits until
brought in by an extension thereof in 1876.      Kirkwood
avenue is a street extending east and west along the north
side of the plat in question.      It does not definitely appear
whether this avenue existed prior to the platting of the
addition, but from the general trend of the testimony we
assume that it did.      Randolph street, as platted, opens
out from Kirkwood avenue at the northeast corner of the
plat, and extends south along the east border of blocks 4,
10, and 11 to the southeast corner of the plat.      Plaintiff
has held the record title to all the lots in the north half of
block 4 (which occupies, as we have seen, the corner be-
tween Kirkwood avenue and Randolph street) since a date
prior to the year 1865.      In the year last mentioned, plain-
tiff and Lucas, being then the owners of all that part of
the platted land in question, united in a writing vacating
all of block 4 (except the northeast quarter thereof) and
blocks 10 and 11, together with other blocks and lots lying
to the westward of those above named.      This deed of va-

cation was duly acknowledged and recorded, and a red ink memorandum thereof made upon the record of the plat, the words, "Vacated. See Book 22, on page 539," being written in the space platted as Randolph street, and extending from the southern extremity of the street north to the southeast corner of the plaintiff's land. By the terms of the deed of vacation plaintiff took the entire east half of the alley bounding his premises on the south, and Lucas the we t half, while the street upon the west of said premises was divided between them along the middle line.

The evidence tends to show that prior to this vacation Lucas had his land south of the plaintiff's land inclosed by a fence extending along the line of the alley above mentioned and across Randolph street. Indeed, so far as the record discloses, no part of said street south of said fence has ever at any time since the platting thereof been open to or used by the public for street purposes. At any rate, no claim appears to be made that the vacation was not effectual as to all that part of the street south of the line of the alley extending east and west through block 4. If this be conceded, then the effect of the written instrument of vacation was to convert the north one hundred and seventy feet of Randolph street into a *cul-de-sac* between plaintiff's land upon the west and land owned by one Aschelman on the east. This fact is, perhaps, of no special significance, except as it may bear upon the reasonableness of the claim asserted by plaintiff. He says that Lucas proposed that they fence in the addition along the line of the avenue, and that he agreed so to do, and executed the paper supposing it gave him the right to the street, but did not read it because of his inability to read the English language. He claims, however, to have proceeded at once to extend a fence across Randolph street on the avenue line, and to have maintained one there ever since, using the inclosed land as his private propert , and placing some minor improvements thereon. In this claim

he is quite strongly corroborated, though there is dispute as to his exclusive possession during the first ten or fifteen years following the vacation in 1865.

He also offers testimony tending to show that Aschelman, then owning the property on the east side of the street, consented to its being closed. It is not necessary to decide whether his consent was essential to a legal vacation of the street; but, if it was, then the further fact that neither Aschelman nor Lucas nor any of their grantees are shown to have made any claim of the existence of such street, or objection to the act of plaintiff in closing it, until very recently, is a circumstance of much weight, indicating that their consent was given. Plaintiff and many witnesses testify, in substance, that from 1865 to the present time he has had exclusive possession of the premises by fence across the north end and by all the usual acts of ownership. No serious dispute is made as to this claim for the last twenty years, but of the period from 1865 to about 1880 it is said, and witnesses testify, that the north end of the street was not closed, and some swear to having driven their teams in upon that part of the street between plaintiff's premises and Aschelman's. This confli t may be reconciled without impeaching the veracity of any of the witnesses. The maintenance of a fence there is not necessarily inconsistent with the fact that the way was sometimes open to entrance from the avenue. Taking all the evidence together, we think the preponderance is with the plaintiff, and that his exclusive possession has been, in a legal sense, continuous since 1865. There is no showing that the city or other public authority has ever worked any part of the street, or expended any time or labor in repairs thereon.

I. Plaintiff's first contention is that under the law of the state he and Lucas, being the sole owners of the platted land, had a right to vacate the plat, and take possession of the streets, alleys, and public grounds as private

property (see chapter 78, Laws 9th General Assembly), and that, even if the written instrument executed and recorded by them was insufficient to accomplish the purpose, yet, if they did in fact agree to the vacation, and acted upon it, and took possession of the land accordingly, and have ever since maintained that possession with the knowledge of and without objection from the city, then a court of equity will treat the vacation as an accomplished fact, notwithstanding the failure of the record to disclose a written deed of vacation in strict accordance with the statute. There is much force in this argument, but in view of the conclusion reached in the next division of this opinion, we will not attempt to pass upon the question thus presented.

II.   Whether one may obtain title to a street by an application of the ordinary rules in respect to adverse possession is a question on which there is a marked conflict of authority.   The numerous decisions affirming and denying the proposition are quite fully collected in 1 Am. & Eng. Ency. Law, 878.   This court has held to the doctrine that the public right to the use and control of a duly established street, and especially where it has once been actually opened to and made use of by the public, cannot be devested by mere adverse possession for the statutory period of limitation.   *City of Waterloo v. Union Mill Co.*, 72 Iowa, 437.   This does not mean that a city may abandon all use of and control over a street, and stand idly by while it is closed to the public under a claim of private right, and subjected to use and occupancy as private property, and then at any time in the indefinite or remote future be heard to demand its reopening.   There is no law which compels a city to open and improve a street which has been platted and dedicated to public use, nor any law which forbids the total abandonment or vacation of one which has already been opened.   It is, therefore, well settled in this and most other states that, while mere non-user for ten years or more will not of itself operate to

defeat the public title to a street, yet where there has been such nonuser for a long time,—not less than the statutory period in ordinary cases,—and this is accompanied by the actual and notorious possession of the land by an individual as private property under a claim of right, an abandonment will be presumed, and the public right in the street will be held to have been extinguished. Parallel with cases thus holding, and largely along the same lines of reasoning, are the numerous decisions which apply to the doctrine of estoppel to municipal corporations to prevent the assertion of public right to a street where the exercise of such right would be inequitable.

In *Simplot v. Dubuque*, 49 Iowa, 630, which involved an attempt by the city to open a street after long nonuser, we said: "The plaintiffs are, we think, entitled to the relief sought on the ground that the right of the city to occupy the land for the purposes of a street must be regarded as abandoned. Plaintiffs have held possession of the land under claim of right for more than thirty years, and during this long period of time the city has made no attempt or claim of right to open the street." In *Larson v. Fitzgerald*, 87 Iowa, 402, it appeared that three miles of the road in controversy had been fenced and used as private property for thirty years, and there were other facts tending to show an abandonment of other parts of it. In holding that the road no longer existed, the opinion says: "There is no question but that the public may lose its right to all or part of a legally established highway by nonuser. It will not be denied that the public has lost its right in the east three miles of this road by permitting it to be fenced up for thirty years." In *Davies v. Huebner*, 45 Iowa, 574, the highway was legally established sixty feet in width. The road was not used by the public for many years, and later one of the parties owning land along its course fenced his premises to the middle line of the way, and continued to occupy and use the in-

closed portion as private property for more than ten years. We affirmed the judgment of the district court holding that the public right in the one-half of the width of the road was extinguished. To the same general effect see *Smith v. Osage*, 80 Iowa, 88; *Davenport v. Boyd*, 109 Iowa, 248; *Pella v. Scholte*, 24 Iowa, 293; *Orr v. O'Brien*, 77 Iowa, 253; *Smith v. Gorrell*, 81 Iowa, 218. See, also, *Knight v. Heaton*, 22 Vt. 481; *Beardslee v. French*, 7 Conn. 125 (18 Am. Dec. 86); *Holt v. Sargent*, 15 Gray, 97; *State v. Culver*, 65 Mo. 607 (27 Am. Rep. 295); *Gregory v. Knight*. 50 Mich. 61 (14 N. W. Rep. 700); *Newport v. Taylor's Ex'rs*, 16 B. Mon. 699; *Corning v. Gould*, 16 Wend. 531; *Peoria v. Johnston*, 56 Ill. 46; *Fox v. Hart*, 11 Ohio, 414; 1 Greenleaf's Evidence, section 45.

Under these authorities, and upon the practically undisputed facts in the case, we see no way of escaping the conclusion that whatever of public right once existed in the disputed strip of land had been abandoned long before this action was begun. Practically speaking, the land has never been opened or subjected to public use as a street since its platting fifty-six years ago. This is concededly true for a period of twenty years immediately before the commencement of suit, during all of which time the defendant has been in actual, exclusive possession under claim of right, without protest or interference from the city, its officers, or the general public. This we have repeatedly held will work a loss of the public right, and the rule thus stated must be considered the law of this state. This, it must be remembered, does not apply to mere nonuser, where there is no actual possession under a hostile or inconsistent claim of right; nor will mere delay to assert a public right, in the absence of other circumstances raising an equity in favor of an individual claimant, be sufficient to create an estoppel or establish an abandonment. This conclusion makes it unnecessary for us to decide whether the taxation of the disputed strip by

the city constitutes an estoppel to assert the existence of the street. The fact of such taxation may at least be considered an item of material evidence,—not conclusive, of course, but not without weight,—in passing upon the question of the abandonment of the street by the city.

The decree of the district court will be reversed, and plaintiff granted the relief demanded.—REVERSED.