JAMES S. CHRISMAN, ET. AL., v. OMAHA & COUNCIL BLUFFS RAILWAY AND BRIDGE COMPANY, ET AL., Appellants.

125   133
s137   435

**Highways:** VACATION: EVIDENCE. Where a petition averring the establishment and use of streets up to the time of bringing suit, to have been without authority in law or right, is answered by a general denial, proof that the street had been vacated and closed by abutting owners, is rendered admissible.

**Vacation of streets.** The streets which the proprietors of a plat may vacate are only those in which no adverse interest has been acquired.

**Construction of "highway."** The term "highway" as used in Code, section 919 means a traveled street within corporate limits, and not the space between blocks and lots which may become such a street.

**Vacation of streets.** The owners of part of a dedicated and accepted plat cannot divest the public of the fee to a traveled street, although the corporation may subsequently have been dissolved.

**Streets:** RIGHTS OF ABUTTING OWNERS. Neither obstruction of a portion of a street nor the vacation of a highway forming of it a *cul-de-sac* will destroy it as a highway.

*Appeal from Council Bluffs Superior Court.*— HON. G. H. SCOTT, Judge.

WEDNESDAY, JUNE 15, 1904.

IN 1881 the Missouri river, which had been flowing in a northeasterly direction, and then curving around to the south, suddenly abandoned its old channel, and cut a new one in the Nebraska side, more directly south. The eastern extremity of the abandoned bed filled with water, and has since been known as " Lake Manawa." In 1887 the land bordering on the lake to the north was platted into lots, streets, and alleys. Many of the lots were disposed of and improved. Later the Lake Manawa Railway Company constructed a

railway for the carriage of passengers from Council Bluffs to the lake. A town known as " Manawa Park " was incorporated in 1888, but the organization was subsequently declared illegal. The Omaha, Council Bluffs & Suburban Railway Company acquired the property of the Lake Manawa Company, and on August 17, 1900, petitioned the board of supervisors of Pottawattamie county to vacate the following streets of the plat: Portland avenue, lying west of Third street; South Fourth street, south of Park avenue; and some others not involved in this action. The vacation was ordered as prayed. · What appears on the map as " Vacated County Road " was regularly vacated November 15, 1900. At this time the railroad company owned, and had inclosed by fence, blocks 27, 28, 29, and 30, and all of 33 and 34 out of the water. Subsequently it acquired block 31, and on the 18th of April, 1902, by resolution of its board of directors, ordered that it be vacated, and proceeded to include it within its inclosure with a tight fence, eight feet high. Thereupon the plaintiffs begun this action to enjoin the closing of South Third and certain other streets. The plaintiff Beck is owner of lots 17 and 18, and leases lot 16 in block 26. On these he operates a saloon, and lives in a cottage. Ballow owned lot 15, where he lived and kept a restaurant. Chrisman and Robards own the greater part of the lots outside of the inclosure, and rent to different tenants. The last company named has transferred its property to the Omaha & Council Bluffs Railway & Bridge Company since suit was commenced. On hearing, the court entered decree as prayed as to Park avenue and South Third street, and denied relief as to the others. Both parties appeal, that of defendants being first perfected.— *Affirmed.*

The following is the map referred to:

*Wright & Baldwin* and *Harl & Tinley,* for appellants.

*Flickinger Bros.,* for appellees.

LADD, J.—Before a highway is vacated, the statutes require the county auditor to appoint a commissioner to examine into the expediency of such a course, and that within thirty days such commissioner file his report in the auditor's office. Section 1486 *et seq.,* Code. The appellee contends that several of the roads vacated within defendant's inclosure, though mentioned in the petition for vacation, were not named in the commissioner's appointment or report. The record of the auditor, as set out in the abstract, reads that "the auditor appointed Ernest E. Cook commissioner to view and report upon the proposed vacation, who on September

29, 1900, reported recommending the vacation petitioned for." Appellee, in an amendment to the abstract, sets out what purport to be copies of the appointment and report, but the transcript filed fully sustains the defendant's denial that these were ever introduced in evidence. The proceedings appear from the abstract to have been regular, and the vacation legal.

II.     Appellee insists, however, that this evidence was not admissible, inasmuch as the defense that the streets had been vacated was not specially pleaded.     The petition averred

1. HIGHWAYS: vacation; evidence. the establishment and continued use of the streets up to the time of bringing suit, and that the attempt to close them was " without authority in law or in right," and " without sanction from the proper authorities."   The general denial put these allegations in issue, and proof that the streets had been vacated and inclosed by the owners of the abutting lots was entirely in point in meeting them.

III.     After defendant had acquired block 31, it, by an appropriate resolution of its board of directors, ordered the vacation of South Third street from Portland avenue south, and proceeded to inclose that part of it with its other grounds. Two objections are made to the validity of these proceedings: (1) That such street was a highway, and for this reason could not be vacated by the proprietors of a part of the plat; and (2) that the vacation of the street would abridge the rights and privileges of the plaintiffs.   Section 919 of the Code provides that " any part of the plat may be thus vacated provided it does not abridge or destroy any right or privilege of any proprietor in said plat, but nothing contained in this statute shall authorize the closing or obstruction of the highways."   The reference is to the preceding section, which reads: " Any such plat may be vacated by the proprietor thereof at any time before the sale of any lots, by a written instrument declaring the same to be vacated executed, acknowledged and recorded in the same office with

the plat to be vacated, and the execution and recording of such writing shall operate to annul the plat so vacated and to divest all public rights in the streets, alleys and public grounds described therein. In cases where any lots have been sold, the plat may be vacated as in this chapter provided by all owners of lots joining in the execution of the writing aforesaid." The plat here contemplated is authorized and defined in the four sections previous, the last of which (section 917) declares that, when acknowledged and recorded, "such acknowledgment and recording shall be equivalent to a deed in fee simple of such portion of the premises platted as is set apart for streets or other public purposes."

From these different sections it is manifest that the word "street" is used to designate the spaces left between the lots for public travel. The title thereto does not vest in the city or town prior to its acceptance, and until then it is not deemed a road or public thoroughfare. *Brown v. Taber,* 103 Iowa, 1. It is possible that under section 918 the title of the municipality in streets and alleys may be divested, even after their acceptance, where the original plat is vacated in its entirety. Ordinarily such action would not seriously affect any public interest, for the reason that it will not be likely to occur after any considerable improvements have been made. On the other hand, it is not reasonable to suppose that it was intended by the Legislature to confer on the proprietors of a plat the power to divest a city or town of title in streets on which public moneys have been expended without the knowledge or consent of its officers. A fair interpretation would seem to be that the public rights in the streets which may be divested are those of acquiring title by acceptance. Be this as it may, the remaining statutes proceed on the theory that the streets that proprietors may vacate are those only in which no adverse interest has been acquired. If accepted by the municipality, and improved so that the

2. VACATION OF STREETS.

conveyance has been effective in passing the fee thereto, it is beyond the reach of the proprietors of a part of the plat.

In section 919 highways are expressly excluded from the power to vacate. The term "highway," as here employed, means a traveled street, as distinguished from a mere space laid out between lots and blocks, which may some time become such. It cannot be construed to mean a country road, for the plat contemplated in the sections mentioned is that filed within corporate limits, where a road is always a street. This view is confirmed by section 920, which, in authorizing an action in court for the vacation of a plat, directs that "if any streets as laid out on the plat shall be needed for public use it shall be excepted from the order of vacation and shall remain a public highway." All streets are highways, but all highways are not streets. *Sachs v. City of Sioux City,* 109 Iowa, 224. Of course, the words are sometimes discriminated in statutes, and, when this is done, each is to be accorded the meaning intended. Elliott on Roads and Streets, section 19. But as employed here, the term "highways" necessarily includes "streets," for it could apply only thereto; and, in the section following, a street is expressly denominated a "highway."

3. CONSTRUCTION OF "HIGHWAY."

The reason for denying the owners of a part of a plat the right to divest the public of the fee to a traveled street is apparent. Otherwise private interests might dictate the closing of a part of any thoroughfare in a town or city, thereby confiscating valuable improvements made by the municipalities at great expense, and diverting travel around by way of other streets. If this were the rule, what is to prevent the owner of blocks on opposite sides of Walnut street in Des Moines from vacating the portion of it between such blocks? Of course, this is extremely improbable, but it illustrates the extent of the power claimed for proprietors of a part of a plat. The Legislature has very wisely lodged the power to vacate highways in cities and towns in their respective councils and highways in the coun-

4. VACATION OF STREETS.

try in the board of supervisors.   The question involved was not raised in *Lorenzen v. Preston,* 53 Iowa, 580.   In *Conner v. Iowa City,* 66 Iowa, 419, the streets had never been opened for travel, and the same is true of *McGrew v. Town of Lettsville,* 71 Iowa, 150.   Nothing decided in *Sarvis v. Caster,* 116 Iowa, 707, is opposed to the conclusions announced.   It is immaterial that the corporation of Manawa Park was subsequently dissolved.   In accepting the dedication of the streets, it acted as an incorporated town *de facto,* and, subsequent to the termination of the incorporation, the street continued to be used and traveled by the public as a highway. The *animus dedicandi* of the proprietors of the plat cannot well be questioned, and the acceptance of this street as a public highway, both by the incorporated town, and subsequently to its dissolution by the public generally, is fully established by the evidence.   As such highway outside of the limits of a city or town, it could only be vacated by the order of the county board of supervisors.

II.   The evidence shows that South Third street, as well as Park avenue, was regularly platted and accepted by the public.   During the existence of the incorporated town

**5. STREETS:** of Manawa Park, it was one of its main thoroughfares, and it has been traveled since.
**rights of abutting owners.**

Neither the council of that town, nor the supervisors, have ever attempted to vacate it.   That it was traveled from 1888 to 1900 is not disputed.   The lower end seems to have been somewhat obstructed by engines and cars of the motor company from 1898, and in 1900 its successor placed tracks in the lower end, and this resulted in turning much of the travel by way of Portland avenue to Second street, and then south. After the county road had been vacated, Third street below Portland avenue was used little, save by those who took this route to reach the lake.   But the street cannot be said to have been abandoned by the public.   The rather, it had been so obstructed by the railway company that the public could not well make use of it.   It is a case of exclusion of, and not

abandonment by, the public. Merely obstructing it did not
destroy it as a thoroughfare; nor did the vacation of the
county road, creating of it a *cul-de-sac*, have this effect. See
15 Am. & Eng. Ency. of Law (2nd Ed.) 351. Before travel
had been impeded by laying the track in the street, it had
been used as an approach to the lake. A dock had been
maintained at its end, and a landing for boats. The plain-
tiffs bought their property with reference to its accessibility
to the lake, and the evidence shows, without dispute, that the
vacation of this street would injuriously affect the value of
such property. True, their patrons might reach the lake
through defendants' ground, as suggested, but this would be
by permission, and not as a matter of right.

It is said that Third street does not reach the lake.
The record is not clear on this point. Odell testified, " There
is a strip pretty near twenty feet south between the old county
road and the shore line of the lake," and that the rail-
road company bought it of Chrisman and Robards. But
he was unable to say that any part of this strip was south
of the west line of Third street and the alley in block 31.
The evidence that Lake avenue, 24 feet wide, is along the
south side of the plat, is undisputed. Day testified that it
was on the south side of blocks 31 and 32, running to the
lake; and Ballow, that " Third street was open to the lake."
The parties first stipulated, the " lake front being practically
the south line of the boulevard [county road] on the plat,"
and afterwards that " the wavy line on the south and west
of what is marked ' Boulevard ' was at the time the shore of
Lake Manawa." If the above strip does lie at the end of
South Third street, it has been no obstacle in the approach
to the lake, for the evidence is undisputed that Lake avenue
forms the south boundary of the plat, and the lake may be
reached by turning in from South Third street into Lake
avenue. As contended, these lot owners cannot claim ripa-
rian rights, but they may interpose objection to the closing
of the only public avenue of approach from their property

to the lake, accessibility to which constitutes their chief value.

It follows that the decree is right, and should be affirmed.

DEEMER, C. J., dissenting both from the reasoning and the conclusion of the majority.