NICHOLAS BAKER v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY and WILLIAM LONG, Appellants.

**Street railways:** LOCATION OF TRACKS: OCCUPANCY OF STREET. The designation of a portion of a street for occupation by the tracks of a street railway company, at a time when such use was simply an additional burden upon the street for which abutting owners were not entitled to damages, did not confer the right of exclusive occupancy and control of the designated portion of the street but simply fixed the location of the tracks.

**Same.** Where a street railway track was located in a designated portion of the street at a time when compensation to the abutting owners was not required, but was afterwards changed to another part of the street by agreement with such owners, the company could not, after the passage of a law requiring compensation, lay another track without first compensating such owners, although laid at or near the location of the track as first laid.

**Streets:** DEDICATION: ACCEPTANCE. Where a street has been used as such by abutting owners, who have constructed buildings in accordance therewith, but slight evidence of acceptance of dedication is required; and this may be established by an act of the city in authorizing a street railway company to lay its tracks along the street.

**Same:** ABANDONMENT OF STREET. Where a street is occupied and used by a street railway company with permission of the city, the fact that other use of the street is limited to travel by pedestrians and by teams to and from only one or two buildings thereon will not establish abandonment by the city.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

THURSDAY, FEBRUARY 15, 1912.

SUIT to enjoin the defendant from laying a side track. From decree as prayed, the defendant appeals.—*Affirmed.*

*J. L. Parrish* and *McNett & McNett,* for appellant.

*Work & Work,* for appellee.

LADD, J.—The controversy involves the right of defendant to lay a side track in what is known as Samantha street, in Ottumwa. The plaintiff owns property abutting the street, and asserts that defendant may not construct the side track thereon without first compensating him for the attending injury to his property. The defendant contends that the strip of land known as Samantha street was never accepted by the municipality as a street, and, if it were, that it has been abandoned as such by the city since, and, further, that plaintiff is estopped from objecting to the appropriation of the street by the laying of the side track. To fully understand the situation, a brief history of the use of the street is essential. In the original plat of what was then known as Louisville, filed in 1844, Samantha street extended from Union street west intersecting College, Jefferson, and Green streets to a tract of land designated "Donation to Mill." The next street north, Front street, now known as Main street, and the principal thoroughfare of the city, passed immediately north of this tract, which was platted in 1858, and Samantha street was extended to Market street (next west of Green street), and south to the Des Moines river. In 1869 or 1870 a bridge spanned the river on Green street, but a year or two later went out, and another was constructed on Market street, and has been maintained since. In 1854 the city council of Ottumwa (the Legislature having changed the name of Louisville to Ottumwa) passed an ordinance wherein it ordained "that the right of way be granted to the Burlington & Missouri River Railroad Company on Samantha street in Ottumwa

to use the same for track or tracks of said road or for depot purposes," and in 1859 the city entered into an agreement with that company, wherein, among other things, the city granted to that company, its successors and assigns, "the right of way for its tracks over and along the streets, alleys and public grounds, on and along the line of said road as the same is located and is designated on and by the map and plat hereto annexed, which right of way shall be of the width of twenty-eight feet and as to Samantha street the said right of way is to be taken on the southerly side of the center of the street so as not to interfere with a sidewalk of four feet on the southerly side of the street." This contract subsequently was ratified by the voters of the city. This road was built into the city of Ottumwa and along Samantha street in the fall of 1859, and was not extended until 1865. Its north rail is thirty-three and twenty one-hundredths feet south of the north line of the street. Later the same company constructed another line of railroad along the street, the north rail being nine and twenty-six one-hundredths feet south of the south rail of that first mentioned. The Chicago, Burlington & Quincy Railway Company now operates these lines. On June 26, 1860, a contract was entered into between the city and the Keokuk, Ft. Des Moines & Minnesota Railway Company, wherein the former for considerations specified, and, "for the purpose of facilitating the construction of the railroad of the party of the second part, along and up the Des Moines river, confers on the party of the second part the right of way through the said city over and along the streets, alleys and public grounds of said city, to wit: Along the north side of Samantha street through the city of Ottumwa, twenty-eight feet in width from the center of said street, leaving north of said twenty-eight feet at least four feet of said street for a sidewalk." The grade was to be established the same as that of the street, which the city had agreed should conform with that fixed by the

engineer of the Burlington & Missouri River Railway Company for its track, but the city was not to change the grade physically until it so elected, and the contract was to be "so construed as not to change the liability from the said party of the second part to account in damages if any shall be occasioned to private persons by reason of the rights herein granted, but the liabilities of the said party of the second part shall in this respect be and remain the same as though this contract had not been entered into." The road was completed into Ottumwa in 1860, and extended the following year. The north rail of the main line was laid twenty-three and twelve one-hundredths feet south of the north line of Samantha street, and in 1871 or 1872 a side track was put in at the request of plaintiff, who then owned lots 271 and 272, fronting on Samantha street, at its intersection with Green street, and was engaged in buying and shipping grain and other produce. This side track left the main track at the east, and extended in a westerly direction six or eight feet south of and parallel with plaintiff's building, which was flush with the street line to Green street. It was maintained there for eighteen or twenty years, when plaintiff, who also owned lot 270 immediately east of lot 271, disposed of the same to Daum for street railway purposes, and the side track was so changed that the north rail was nine and thirty-five one-hundredths feet from the southeast corner of plaintiff's lots and seventeen and thirty one-hundredths feet from the southwest corner, and extended farther east so as to furnish facilities for unloading coal and the like at the street railway company's premises. This side track was used until 1909, when the defendant company, to accommodate wholesalers, the rear of whose buildings farther west abutted the street, began the construction of a side track from a point in that existing ninety-five feet east of the southwest corner of plaintiff's building or near the south door thereof westerly across Green street to a point in another side track branching from the

main track, about one hundred and eighty-five feet from the west line of Green street. The design was to put in a switch at the west end, where the north rail would be nine and ninety-two one-hundredths feet from plaintiff's lot line, and the north rail would be ten or eleven feet from the southwest corner of plaintiff's lots. The Keokuk & Des Moines River Railroad Company had succeeded to the property of the Keokuk, Ft. Des Moines & Minnesota Railway Company, and the defendant, as lessee, is in possession, and operating the railroad.

I. It will be observed that in granting the right of way the city did not vacate the street, but merely regulated its use for an additional mode of transit, and, under the law as it then stood, damages might not be recovered by the owners of property abutting the street because of the increased burdens. *Milburn v. Railway,* 12 Iowa, 246; *Drady v. Railway,* 57 Iowa, 393. As occupation of the streets by railway tracks was regarded merely as an additional use, the granting of the right of way "over and along the streets" of the city had reference to such use, but did not confer the right of exclusive occupancy and control and designating a strip twenty-eight feet wide south of the center of Samantha street as the right of way for one company and a strip twenty-eight feet wide north of the center, for the other no more than fixed the location within which their respective tracks should be laid. See 27 Am. & Eng. Ency. Law (2d ed.), 174 *et seq.*

1. STREET RAILWAYS: location of tracks: obstruction of street.

The conditions of the contract between the city and the company were such as might be imposed, and thereafter the companies might lay side tracks *ad libitum* within the prescribed strips, and, even though plaintiff may have requested that first laid and contributed to the cost, the company acquired the right to continue it notwithstanding the subsequent enactment of section 464, Code 1873, declaring that "until after the injury

2. SAME.

to the property abutting upon the street . . . upon which such railroad track is proposed to be located and laid down has been ascertained and compensated," as therein provided, it may not be laid. See section 767, Code 1897. But the side track was moved further south and extended in 1889. This was a mere change in the location of an existing track effected by the company at the request of plaintiff and probably by Daum for the street railway company so as to enable it to unload coal from cars thereon at the latter's power house. Plainly enough, the new location for the side track was mutually agreed upon in lieu of the old, the change made accordingly, and thereby all right to the former location abandoned. Under these circumstances, it seems needless to add that plaintiff is not estopped, after the lapse of eighteen or twenty years, from objecting to the construction of another side track in the street, even though at or near the location of that first laid. Though the railway was laid when this might have been done, without compensating abutting owners, compensation is now necessary before additional side tracks may be laid in the street. *Drady v. Railway, supra; Merchants' Union Barbed Wire Co. v. Railway,* 70 Iowa, 105. See *Harback v. Railway,* 80 Iowa, 593.

II. Nor is the contention that Samantha street was never accepted as one of its thoroughfares by the municipality well founded. Of course, there must have been an acceptance, but, after so many years, slight evidence is thought sufficient to show this.

3. STREETS: dedication: acceptance.

Prior to the laying of railroad tracks therein, dwelling houses had been erected along the street, and there was considerable travel on it. No grade was established by ordinance save as this was to be inferred from those of intersecting streets, though the contracts indicated how it should be ascertained, and no work appears to have been done thereon by the city. But at a time when the street was being used as such by the abutting property own-

ers and traveled by the public the city in the resolutions of its council and contracts with the railway companies distinctly recognized it as a street. If not a street, the ground therein belonged to the dedicator and the city in authorizing the railway companies to lay their tracks therein was participating with these in trespassing upon his land. This is not to be inferred, but rather that it was proceeding in a lawful manner, and that in granting the use of the street to these companies it recognized a previous acceptance thereof, or thereby accepted the dedication thereof, even though this may have been for the purpose of enabling it to furnish a passageway for the railroads through the city. This was no more than devoting it to an additional use as a street, and was utterly inconsistent with the contention that the strip of ground known as Samantha street had not been, or at least was not, thereby accepted under the dedication tendered in filing the original plat. See *Burroughs v. City,* 134 Iowa, 429.

III. It is contended, however, that the city has abandoned the street. Travel continued thereon for a time after the railroads were laid, but those living in the houses along

4. SAME: abandonment of street.

it moved away, the houses were torn down, and its use as a public thoroughfare in the language of plaintiff "just kind of faded out." For more than thirty years it had ceased to be traveled generally as a public highway. But the railway companies have continued to use the street over and along which to lay their tracks and operate their trains precisely as stipulated in the contracts, and laborers travel thereon in going to and from their places of employment. More than forty trains pass over the street daily, and switching is continual throughout the busy hours of the day. The public generally has ceased to travel along the street, probably owing to the existence of the tracks and danger from passing trains. But from 1872 until 1905 it was used as a means of access to plaintiff's building. In 1872 he erected

a three-story building on his lots fronting forty-four feet on Green street, with a one-story engine room to the west extending one hundred and twenty feet on the Samantha street line. About ninety-five feet east from the southwest corner was a door opening on Samantha street. This building was used as a flour mill for a while, and later as a grain house, and after 1878, besides loading and unloading cars at this south door, plaintiff took in grain purchased locally. He rented the building to Kenyon & Young to be used as a wholesale drug house. in 1895, and the evidence that goods were delivered on drays from this south door during the next two or two and one-half years is undisputed. Emery & Co. occupied it as a wholesale fruit house from 1898 until 1905, and had drays come to this door only occasionally to haul away empty crates and decayed fruit. Throughout this period the wagons were either driven from Green street next to the building and out through an open way east of it and through an alley north out into Green street or out on the tracks and backed in so as to drive out along the building back to Green street. Since 1905 the upper two stories have been rented as a rooming house, and the lower story to the street railway company as a work and repair shop. No business houses and, with possibly one or two exceptions, no residences, front on Samantha street, but to the west of Green street wholesale business houses fronting to the street north are afforded railroad facilities at the rear on this street. There is a catch-basin extending about two feet above the surface immediately south of the north line of Samantha street and about eight feet west of the southwest corner of plaintiff's building, and a post five feet eight inches south of plaintiff's building, with a board facing Green street, on which is painted: "No thoroughfare. Walking on the tracks is strictly forbidden. C., R. I. & P. Railroad Company," and in going to the south door it may have been necessary for the teams to pass around these over the tracks. It is manifest that the city, if so

disposed because of its occupancy by the railroads, could have done little or nothing in the way of improving the street. If it were not traveled by pedestrians and vehicles, this was because its use as a street by the railway companies was so complete as practically to exclude them. But such occupancy (originally was by virtue of it being a street and the use to which it had been lawfully devoted as such has continued since. For this reason, the mere occupancy) by these companies can not be regarded as evidence of abandonment of the street by the city, or as tending to estop the city from asserting that Samantha street is still a street subject to the uses authorized. Its use, otherwise than by the railway companies, may have been limited to travel over it by pedestrians and by teams and vehicles in gaining access to the property of plaintiff and possibly another abutting thereon, but neither this nor the occupancy by the railways, not being inconsistent with its continued use as a street, tended to prove any abandonment of the street by the city.

This being so, plaintiff might invoke the benefit of the statute (section 767 of the Code) prohibiting the laying of the track in the street before compensating abutting property holders for the damages, if any, occasioned thereby.

The decree enjoining defendant from laying the side track until this had been done is *affirmed*.