John Kelroy et al., Appellants, v. City of Clear Lake et al., Appellees; John B. Whittaker, Appellant.

No. 45963.

August 11, 1942.

Westfall & Laird, Senneff & Duncan, of Mason City, and O. J. Kirketeg, of Bedford, for appellants.

E. R. Boyle and E. B. Stillman, of Clear Lake, for appellees.

GARFIELD, J.—Clear Lake is a city of the second class, bordering on a lake of the same name. Plaintiff Westfall and defendant Whitaker hold title (the validity of which is in question) to the strip in controversy lying between the lake and the lots of the remaining plaintiffs. The lots are numbered 24 to 33 of Whitaker's Replat of Block 3 of Clear Lake. They face the lake and are improved by cottages occupied by plaintiffs. The strip in controversy is 285 feet in length, along the lake. Plaintiff Kelroy testified the width varies from about 40 to 47 feet, from the top of the wall along the front of the lots to the high watermark. The wall varies in height from about 18 to 30 inches. Along the outside of the wall is a 6-foot cement walk, which has been at all times open to pedestrian traffic and the right of the public so to use the walk is admitted. The strip is a continuation to the north, one block in length, of Lake or First Street, which runs along the lake shore.

In about 1897, streetcar tracks of the Mason City and Clear Lake Railway were laid lengthwise of the strip. Passenger cars ran over the tracks until about 1935. Since abandonment of streetcar passenger service about the only use of the tracks has been during the ice harvest in winter. The strip has not been generally used for vehicles since the car tracks were built. Set out is a map of Whitaker's Replat of Block 3 showing the strip in question, which, however, is now narrower than the map indicates.

In July 1938, the city planning board recommended to the city council that the strip in question be opened for public use as a street. In February 1939, the council resolved to improve and open this so-called street for vehicular traffic. After

ISAAC WHITAKER'S REPLAT
OF BLOCK 3, VILLAGE OF
CLEAR LAKE, IOWA.

SECOND ST.

WHITAKER
COURT

150'

140'

NORTH ST.

JEFFERSON ST.

COURT AVE.

65.3' 25 " " " " 25 65.3'
8
15 14 13 12 11 10 9 7
16 6
17 5
18 4
19 3
20 2
21
22 1

50' 25 25 3a.5
23 25 26 27 28 29 30 31 32 33
24

STONE WALL

CENTER M.C. + G.L. RY.

SHORE OF CLEAR LAKE

CORNER C.E.MANN'S
STONE WALL

39'-8' 31'-4"

45' POST
63' POST

some leveling and graveling, this suit was brought by the property owners against the City and the members of its council, seeking to restrain further improvement or use as a street. Plaintiffs contend the City has no title to the ground; that the

City is estopped from using it as a street; that the strip is not suitable for a street, principally because it is too narrow. Following a trial, plain'iffs' petition was dismissed and this appeal taken. The City will be referred to as if it were sole defendant.

I. We first consider the legal title to the strip in question. In 1856 Marcus Tuttle and one Dickerson platted the village of Clear Lake. Tuttle, however, owned personally all of the ground now owned by plaintiffs, including the strip in controversy. The ground platted consisted of 16 blocks and a public square, together with streets and alleys. Block 3 was in the northwest corner of the plat, in the same location in which Whitaker's Replat of Block 3 was later situated. (Whitaker's Replat was made in 1900.) Lake Street, shown in the village plat, extended along the lake for six blocks. The part of Lake Street lying between Block 3 and the lake is the strip now in controversy. The village plat was duly acknowledged and then recorded pursuant to direction of the county judge. The village of Clear Lake was incorporated in 1871, and ordinance No. 1, July 11, 1871, accepted the streets and alleys within the limits of the town as dedicated by the original owners thereof, "to be hereafter used and held as such."

The acknowledgment and recording of the plat, together with the subsequent incorporation and acceptance of the streets, were equivalent to a deed in fee simple to the town of the land set apart in the plat for streets or other public use. The applicable statute then in force, section 637, Code, 1851, a part of chapter 41, entitled "Village Plats," provided:

"The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use * * *."

While the making and recording of a plat constitutes a deed of dedication to the public of the designated streets, it is well settled that such plat does not make them public streets until the public has in some manner indicated its acceptance thereof. Like all deeds, an acceptance is necessary. Bowersox v. Board of Supvrs., 183 Iowa 645, 648, 167 N. W. 582; Chris-

topherson v. Incorporated Town of Forest City, 178 Iowa 893, 899, 160 N. W. 691; Brown v. Taber, 103 Iowa 1, 72 N. W. 416.

Here there was such acceptance by ordinance No. 1. Upon incorporation and acceptance, the village streets became streets of the incorporated town, which held title thereto. Incorporated Town of Ackley v. Central States Elec. Co., 206 Iowa 533, 537, 220 N. W. 315. See, too, McKinney v. Rowland, 197 Iowa 180, 184, 185, 197 N. W. 88; Lake City v. Fulkerson, 122 Iowa 569, 98 N. W. 376; Blennerhassett v. Town of Forest City, 117 Iowa 680, 683, 91 N. W. 1044. The question before us, which was decided in the Town of Ackley case, was left undisposed of in Town of Kenwood Park v. Leonard, 177 Iowa 337, 342, 158 N. W. 655, cited by appellants. Further, in the Kenwood Park case there was no acceptance of the streets by the city. The purchasers of lots abutting any part of Lake Street took title only to the lot line and not to the center of the street. Blennerhassett v. Town of Forest City, supra; Milburn v. City of Cedar Rapids, 12 Iowa 246, 252. Appellants' contention that the town never acquired more than an easement in this strip must be rejected. We must hold, therefore, that following July 11, 1871, title to the strip in question was in the incorporated town of Clear Lake.

II. Appellants contend, however, that Block 3 and that part of Lake Street between the block and the lake were legally vacated and the town divested of title to the strip in controversy. On September 5, 1876, Marcus Tuttle, the then owner of Block 3, executed and filed for record in Town Plat Book 1, page 59, a paper declaring vacated Block 3 "together with the streets between said Block 3 and the waters of Clear Lake." This paper was also executed by the owners of certain lots in Tuttle's addition which were likewise declared vacated. The record of the original village plat filed in 1851 bears the following endorsement both on Block 3 and on the portion of Lake Street here involved: "VACATED SEE TOWN PLATS PAGE 59."

On September 6, 1876, Tuttle and the other persons who executed the foregoing vacation made and filed for record a plat of Tuttle's Second Addition to Clear Lake. This plat recites:

"Block 3 in the First plat of Clear Lake Village having

been vacated by the owners thereof the same ground is hereby replatted as shown herein. * * * Block 3 is in the same position as the former Block No. 3, with Lake Street vacated between the same and the Lake and added to the Block.''

The map filed as a part of the plat of Tuttle's Second Addition shows no designated street between Block 3 and the lake. On May 1, 1882, the town council passed a general ordinance accepting all the streets, alleys, and public grounds of all additions to the town since the passage of ordinance No. 1, July 11, 1871, without naming or otherwise referring to any streets or additions.

Appellee City contends the attempted vacation of that part of Lake Street here in controversy is of no effect, by reason of section 564, Code, 1873, then in force, which provides:

''Any part of a plat may be vacated * * * provided such vacating does not abridge or destroy any of the rights and privileges of other proprietors in said plat, and provided further, that nothing contained in this section shall authorize the closing or obstructing of any public highways laid out according to law.''

■ The term ''highways'' as used in the statute includes streets in cities and towns. ''All streets are highways, but all highways are not streets.'' Chrisman v. Omaha & C. B. Ry. & Bridge Co., 125 Iowa 133, 138, 100 N. W. 63, 65; Sachs v. City of Sioux City, 109 Iowa 224, 227, 80 N. W. 336; Fleming v. Chicago, D. & M. R. R. Co., 34 Iowa 353, 359. See, also, Hunter v. City of Des Moines, 144 Iowa 541, 547, 123 N. W. 215. Lake Street in 1876 was a public highway laid out according to law and accepted by the town. It was an important street, connecting Main Street and North Street, other principal thoroughfares.

The foregoing statute not only forbade by a partial vacation the closing of any public streets previously laid out and accepted, but also prohibited a partial vacation, if the rights and privileges of other proprietors would thereby be abridged or destroyed.

■ Where lands are platted into town lots and sold with reference to the plat, the purchasers acquire, as appurtenant

to their lots, a vested right to use the streets designated on the plat. This right cannot be divested by the owner who made the dedication. A dedication of streets has been likened to a tender, which may not be withdrawn after acceptance on behalf of the public or the accrual of private rights with respect thereto. Burroughs v. City of Cherokee, 134 Iowa 429, 432, 433, 109 N. W. 876. So, here, Marcus Tuttle could not, by a partial vacation, close any part of Lake Street, nor could he, without their consent, divest the owners of the remaining lots in the original village plat of their right to use Lake Street. Chrisman v. Omaha & C. B. Ry. & Bridge Co., 125 Iowa 133, 137, 100 N. W. 63; Getchell v. Benedict, 57 Iowa 121, 125, 10 N. W. 321; Yost v. Leonard, 34 Iowa 9; Fisher v. Beard, 32 Iowa 346; Cook v. City of Burlington, 30 Iowa 94, 6 Am. Rep. 649; note, Ann. Cas. 1917A, 1109, 1123.

Likewise, the platting of Tuttle's Second Addition without showing Lake Street adjoining Block 3, or the sale of lots with reference to such plat, could not deprive the town of its title thereto nor the remaining lot owners and the public of their right to the use thereof. Somewhat in point is Getchell v. Benedict, 57 Iowa 121, 126, 10 N. W. 321.

Appellants argue that the above section 564, Code, 1873, is inapplicable because it is claimed the strip in question was not used as a street prior to the attempted vacation in 1876, but was a mere "paper street." We have already said that title of the town in this street vested in 1871 when the ordinance of acceptance was adopted. Assuming, however, without deciding, that Tuttle could vacate part of a street at any time prior to its use, we think there is sufficient evidence that Lake Street was used before September 1876. We will briefly refer to the evidence under division IV hereof.

III. Appellants place much reliance upon the notation, "VACATED SEE TOWN PLATS PAGE 59," upon the record of the original village plat. Section 566, Code, 1873, in force in 1876 when the attempted vacation was made, provides that the county recorder shall write across that part of a plat which has been vacated, the word "vacated," also making reference to the volume and page in which the instrument of vaca-

tion is recorded. Appellants seek to invoke the presumption, in the absence of contrary evidence, that a public officer faithfully performs his duty, and argue that it must be presumed that the county recorder, before making the above notation, satisfied himself that all requirements of law had been complied with to effect a legal vacation of this part of the street.

The contention cannot be sustained. As above stated, section 564, Code, 1873, forbade the closing in 1876 of any part of Lake Street or interference with rights therein of owners of other lots in the village plat. The county recorder could not by his notation on the record nullify the statute. The illegality of the attempted vacation appears from the evidence, and the presumption which appellants rely upon cannot prevail.

IV. It is contended the City abandoned the strip in question and is estopped from using it as a street. It is well settled that, while mere nonuser will not of itself defeat the public title to a street, yet where there has been such nonuser for more than 10 years, accompanied by actual and notorious possession of the land by an individual as private property under a claim of right, an abandonment will be presumed and the public right in the street will be extinguished. Mere delay in asserting a public right will not create an abandonment nor give rise to an estoppel.

Furthermore, the occupancy by the individual of the land platted for a street must be inconsistent with its future use for such purpose and exist for such length of time as shows acquiescence by the municipality in the permanent appropriation of the ground for private purposes. Weber v. City of Iowa City, 119 Iowa 633, 638, 639, 93 N. W. 637; Burroughs v. City of Cherokee, 134 Iowa 429, 436, 109 N. W. 876.

Before considering the evidence bearing on this issue, we mention the extent of the title of appellants. The deeds to appellant lot owners were of designated lots in Whitaker's Replat of Block 3, which was made in 1900. Their deeds did not purport to convey more than the lots, the dimensions of which appear on the map of this replat, heretofore set out. The map shows the stone wall to be the dividing line between the lots and the strip in question. It is true, as appellants say, that the strip

is not designated on the map as Lake or any other street, although it plainly is not a part of the platted lots. On this point, see Taraldson v. Incorporated Town of Lime Springs, 92 Iowa 187, 188, 60 N. W. 658; McClenehan v. Town of Jesup, 144 Iowa 352, 358, 120 N. W. 74; Schultz v. Stringer, 168 Iowa 668, 675, 150 N. W. 1063.

By ordinance 82, June 29, 1900, the city council approved and accepted Whitaker's Replat, vacated the alley in Block 3 in the original town plat, and also vacated that part of Lake or First Street lying between said Block 3 and the lake, so that the north line of said block should be 310 feet in length along North Street and the south line of said block should be 259 feet along Jefferson Street. Appellee admits that the effect of ordinance 82 was to vacate sufficient of the east side of Lake Street so that the dimensions of the replatted block were as shown on the map. This ordinance was doubtless passed following request by Whitaker, who then owned Block 3, and indicates that he then recognized the rights of the City in the street in front of the block. It is also significant that in 1897 Whitaker and wife deeded to the street railway a right of way across the southwest corner of Block 3 where the tracks turn onto North Street. If the Whitakers then owned the strip in question, as appellants claim, they were the proper parties to grant a right of way over the strip.

Title of appellant Westfall to the strip in question was obtained by quitclaim deed from the heirs of Whitaker and wife, except appellant John B. Whitaker, a few months prior to the commencement of this suit. If our conclusion in division I is correct, that title to the strip vested in appellee, this deed conveyed no interest because the grantors had nothing to convey. McClenehan v. Town of Jesup, 144 Iowa 352, 359, 120 N. W. 74.

As might be expected, the evidence is in conflict on the previous use made of the strip. As heretofore stated, there was a cement walk along the stone wall. It replaced a board walk which had been built at approximately the same location pursuant to order of the town council in 1882. It is admitted that the public has freely used this walk at all times and has the right so to use it in the future. The evidence shows, however,

that at some other places along the lake privately owned walks where there are no streets are used by the public. As above stated, the street railway tracks were built in about 1897 and passenger cars were operated from that time until 1935 or 1936. These tracks were built on the strip pursuant to permission granted by the town. There is no evidence that any property owner objected to the construction or operation of the streetcar line.

Appellants make the broad claim, which is not without support in the testimony, that the strip has never been used for vehicular traffic and has never been fit therefor. We think, however, the weight of the evidence is that there was such traffic over it as the public wanted and as necessities demanded, at least down to the time of building the railroad tracks, from a time prior to the attempted vacation in 1876. It is true the street, like many streets in small towns, before the advent of automobiles had not been improved for travel. It was sandy and sloped toward the lake. But in the early days Lake Street farther to the south was not substantially unlike this strip.

The witness G. J. Phillips came to Clear Lake in 1868. He testified to the use of this strip prior to 1876 and that there was no difference in such use from the time he came there until the street railway was built. The witness Reese came to Clear Lake in 1876 and testified that "anybody drove through there that wanted to but it was not worked." The witness Halvorson drove a delivery wagon over this street two or three times a week from 1883 to 1887. Other witnesses drove over the strip more or less regularly down to the time of building the street railway.

The street railway made this strip less suitable for vehicular traffic and it was used less frequently for such purpose after 1897. (A somewhat similar situation existed in Baker v. Chicago, R. I. & P. Ry. Co., 154 Iowa 228, 134 N. W. 587.) The rails and at least part of the ties protruded above the surface of the ground. As appears from the map, the space between the rails and the sidewalk narrowed to a point toward the north end where the track turned east over a portion of the corner lot, 24. After the street railway commenced operation, barricades of

temporary construction were maintained at each end of the strip, at least much of the time. They did not interfere with use of the sidewalk nor operation of the streetcars. The mayor admitted these barriers had been in place for 25 years. They were occasionally knocked down by the public, however. The record is not clear as to who put up these barricades. Undoubtedly the city officials knew of their presence. The barriers were marked "No Thoroughfare" or "Private Property." At the corner of North and Second Streets there was a sign indicating that North Street, which ran down to the lake at the north end of the strip, was a blind or dead-end street. This sign was maintained by or with permission of appellee about as long as the barriers stood at either end of the strip.

There is considerable testimony that there was some vehicular traffic over the strip since 1897, although some of appellants' witnesses deny this, and it must be admitted that the streetcar tracks and the barriers made such traffic inconvenient, to say the least. Peterson was a streetcar motorman from about 1899 to 1922, and frequently saw horses and buggies driven over the strip and had to slacken the speed of his streetcar for automobiles which were driven there. Siessiger was an extra motorman on the street railway from 1908 to 1912 and later. He saw horse-drawn and motor vehicles on this strip nearly every day. Another witness drove over the strip with his dray in 1907 and said it was as well traveled at that time as Lake Street across Jefferson Street to the south, in front of the Lake Shore Hotel. Another witness drove a truck over the strip in 1917 when he had occasion to do so. There is other somewhat similar testimony. There is no evidence of any objections from the lot owners to persons driving over the strip.

There were five trees just outside the sidewalk toward the south end of the strip. The south tree was a large oak. There were also about five trees between the car tracks and the lake. On parts or perhaps all of the strip grass was sowed and kept cut by the lot owners. There were also flowers. Steppingstones were placed from at least some of the cottages to the docks which were anchored along the lake front. Appellant Kelroy built a hollow-tile walk from his cottage to his dock.

No buildings or other such permanent improvements, however, were erected on the strip by any property owner. Access to appellants' cottages was commonly had from the court at the rear.

In 1909, Mr. Young, who later became mayor, was the owner of these lots and sold some of them at auction. There is quite a little testimony that it was announced at the auction that the strip was for the use of owners of the lots. At least two appellants say they purchased their lots upon the strength of this statement. At least two witnesses for appellee testified they attended the auction and heard no such announcement. Appellant Mrs. Troeger testified she purchased her lot from Young in 1914, and improved it, upon the representation that the lot extended to the water's edge. Appellant Mrs. Carroll testified she purchased in reliance upon the statement from her vendor that her lot ran to the water's edge. At least one other appellant, Kelroy, testified he purchased because he understood his property extended to the lake. It is not denied that the stone wall, cement walk, and car tracks were in place when each appellant purchased his lot.

Appellee appears to have exercised at least some control over the street in question in addition to ordering in the sidewalk and authorizing the street railway to be built. In 1909 the council ordered street lights erected along the lake from Main (four blocks south) to North Streets, the town to pay for the wiring. Again, in 1927, the council adopted a motion to install street lights along the lake from State (three blocks south) to North Streets. From time to time in the winter appellee caused snow to be shoveled from the walk in front of these lots and levied special taxes against the lots for the cost of the work. The strip was never certified for taxes and no appellant ever paid taxes upon it.

We hold that appellee has not lost its right to open this street by abandonment or estoppel. Courts are generally somewhat reluctant to deprive a municipality of any part of its streets on the theory of estoppel, and seldom do so unless the claimant has constructed permanent and valuable improvements thereon.

Regarding use of this street in the early days, we have said repeatedly that many streets in new plats were dedicated with no serious thought of their immediate improvement or extensive use, but largely to accommodate future needs. McClenehan v. Town of Jesup, 144 Iowa 352, 356, 120 N. W. 74; Burroughs v. City of Cherokee, 134 Iowa 429, 433, 109 N. W. 876; Sarvis v. Caster, 116 Iowa 707, 710, 89 N. W. 84. In the early days streets were frequently subjected to uses somewhat inconsistent with exclusive public rights therein. Lacy v. City of Oskaloosa, 143 Iowa 704, 714, 121 N. W. 542, 31 L. R. A., N. S., 853. Even where there is no formal acceptance of a street, as there was here, and public use is relied on to show acceptance, the use need be only such as the public wants and necessities demand. Iowa L. & Tr. Co. v. Board of Supvrs., 187 Iowa 160, 166, 174 N. W. 97, 5 A. L. R. 1532; Taraldson v. Incorporated Town of Lime Springs, 92 Iowa 187, 189, 60 N. W. 658; City of Waterloo v. Union Mill Co., 72 Iowa 437, 440, 34 N. W. 197.

It has been held many times that the fencing in of a street or the planting of trees, shrubs, flowers, and grass are not such permanent improvements as work an estoppel, even though the city does not complain. Kuehl v. Bettendorf, 179 Iowa 1, 8, 9, 161 N. W. 28, and citations; Christopherson v. Incorporated Town of Forest City, 178 Iowa 893, 898, 901, 160 N. W. 691. Likewise, the failure of small towns to remove obstructions from streets will not amount to either abandonment or estoppel. Kuehl v. Bettendorf, supra. The presence and use of the street railway and sidewalk were entirely consistent with the continued use of this strip as a street and inconsistent with its private ownership. If not a street, the town had no right to authorize its use for such purposes. This will not be inferred. Baker v. Chicago, R. I. & P. Ry. Co., 154 Iowa 228, 234, 134 N. W. 587.

To grant the relief prayed for would make of North Street a blind or dead-end thoroughfare at the lake. This and the fact that appellants paid no taxes upon the strip are circumstances against the claimed abandonment of this portion of Lake Street. Burroughs v. City of Cherokee, 134 Iowa 429, 440, 109 N. W. 876. The matter of public convenience deserves some consideration. Streets should not ordinarily be declared vacated

for the benefit of private persons if it will probably seriously inconvenience the public. By conceding the right of pedestrians to use the sidewalk, appellants admit, in effect, that the street is needed for one public use. They are really asking that the portion of the street in question be declared partially vacated. We have expressed doubt as to the authority of the court to partially vacate a street. Gable v. City of Cedar Rapids, 150 Iowa 108, 112, 129 N. W. 737.

Christopherson v. Incorporated Town of Forest City, 178 Iowa 893, 160 N. W. 691, and Blennerhassett v. Town of Forest City, 117 Iowa 680, 91 N. W. 1044, are perhaps the principal cases cited by appellants on estoppel. Each case involves an alley which had never been definitely accepted by the town and upon which the claimant had erected permanent structures.

Some other contentions are made which we do not discuss. They have been carefully considered and found not to warrant a reversal.

The judgment is affirmed.—Affirmed.

WENNERSTRUM, C. J., and MITCHELL, HALE, SAGER, OLIVER, STIGER, and MILLER, JJ., concur.

BLISS, J., takes no part.